IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| STEVE CHANEY, | : |
| *Plaintiff*, | : Case No. 1:24-cv-409 |
| v. | : Judge Jeffery P. Hopkins |
| CONSTELLATION INSURANCE HOLDINGS, INC., | : |
| *Defendant*. | : |

## OPINION AND ORDER

Pending before the Court is a Partial Motion to Dismiss ("Motion") (Docs. 7, 8)[1] under Fed. R. Civ. P. 12(b)(6) brought by Defendant Constellation Insurance Holdings, LLC.[2] In the Motion, Constellation asks this Court to dismiss Count II of Plaintiff Steven Chaney's Complaint under 29 U.S.C. § 1140 of the Employee Retirement Income Security Act of 1974 ("ERISA"). For all the reasons stated below, Constellation's Motion (Docs. 7, 8) is **GRANTED**.

### I.  BACKGROUND

Plaintiff Steven Chaney is a former employee of Ohio National Financial Services, Inc. and Defendant Constellation Insurance Holdings, Inc. Compl., Doc. 1, ¶ 3–4. Plaintiff was hired by Ohio National in 2011. *Id.* ¶ 5. After a series of promotions, Ohio National promoted Plaintiff to Vice President of Corporate Services—meaning that Plaintiff became

---

[1] Defendant separately filed its Motion (Doc. 7) and Memorandum in Support (Doc. 8).

[2] Defendant explains that the appropriate corporate Defendant is Constellation Insurance, Inc., a wholly-owned subsidiary of Constellation Insurance Holdings, Inc. Doc. 7, PageID 22 n.1.

an officer of Ohio National and a participant in the Ohio National Financial Services Executive Change in Control Severance Policy (the "Policy"). *Id.* ¶ 6–7.

Pertinent here, the Policy "provided severance pay and benefits for participants who terminated their employment for 'Good Reason' within 18 months of a Change in Control." *Id.* ¶ 8. The Policy defined "Good Reason," in part, as "a material diminution in authority, duties, reporting relationships or responsibilities." *Id.* Plaintiff alleges that he terminated his employment for Good Reason within the prescribed period after a Change in Control occurred in March 2022 when Defendant Constellation acquired Ohio National Mutual Holdings, Inc. ("ONMH") and its wholly owned subsidiary (and Plaintiff's then-employer) Ohio National Financial Services, Inc. *Id.* ¶ 9.

At the time the Change in Control occurred, Plaintiff was responsible for managing the company's airline, OnFlight. *Id.* ¶ 10. Managing OnFlight was a substantial part of Plaintiff's roles and responsibilities. He estimates that OnFlight "comprised about 25 [percent] of [his] overall budget responsibilities and [that he] spent about 30 [percent] of his time managing and overseeing OnFlight and related activities." *Id.* ¶ 11. Following the Change in Control, Defendant ultimately sold OnFlight and ceased all flight operations. *Id.* ¶¶ 12–16. As a result, all positions in OnFlight were eliminated and associated property and equipment were either sold or transferred. *Id.* The sale of OnFlight reduced Plaintiff's overall duties by approximately 30 percent, the number of employees under his supervision by about 25 percent, and his budget responsibility by about 25 percent. *Id.* ¶ 17.

After the sale of OnFlight, members of Defendant's top management, including the Director of Human Resources Michelle Wilson, advised Plaintiff that the sale of OnFlight triggered his Change in Control severance benefits under the Policy. *Id.* ¶ 18. Plaintiff alleges

that in recognition of his qualifying for benefits and due to a strong desire to retain him as an employee, Defendant extended the time for him to exercise his Change in Control benefits under the Policy. *Id.* ¶ 19. Plaintiff nevertheless elected to exercise his right to benefits and gave notice to Defendant that he was terminating his employment under the Policy for Good Reason—*i.e.*, because of the diminution in responsibilities due to the OnFlight sale. *Id.* ¶ 20. Defendant denied Plaintiff's claim for benefits. *Id.* ¶ 21. This suit followed.

Plaintiff pleads two claims in his Complaint. In Count I, Plaintiff asserts a claim for wrongful denial of benefits and seeks relief under 29 U.S.C. § 1132(a)(1)(B). *Id.* ¶¶ 28–30. In Count II, Plaintiff asserts a retaliation claim under 29 U.S.C. § 1140. *Id.* ¶¶ 31–33. Defendant seeks to dismiss Count II under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. LEGAL STANDARD

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This, however, requires "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable interference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Indeed, under the plausibility standard set forth in *Twombly* and *Iqbal*, courts play an important gatekeeper role, ensuring that claims meet a plausibility threshold before defendants are subjected to the potential rigors (and costs) of the discovery process.

"Discovery, after all, is not designed as a method by which a plaintiff discovers whether he has a claim, but rather a process for discovering evidence to substantiate plausibly-stated claims." *Green v. Mason*, 504 F. Supp. 3d 813, 827 (S.D. Ohio 2020).

In deciding a motion to dismiss, the district court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007). In doing so, the district court "need not accept as true legal conclusions or unwarranted factual inferences." *Gregory v. Shelby County,* 220 F.3d 433, 446 (6th Cir. 2000).

### III. LAW AND ANALYSIS

Defendant advances two arguments in support of its Motion. First, Defendant contends that Plaintiff's § 510 claim is duplicative of his § 502(a)(1)(B) claim. Doc. 8, PageID 28–30. Second, Defendant argues that Plaintiff has not plausibly alleged a § 510 claim. *Id.* at PageID 34. Plaintiff has failed to plausibly allege a claim under § 510, thus the Court declines to decide whether Plaintiff's § 510 claim is duplicative of his § 502(a)(1)(B) claim. The Court will first address the claim under § 510.

#### A. Count II

Section 510 of ERISA makes it unlawful to "discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled to under [a benefit] plan." 29 U.S.C. § 1140; *Williams v. Graphic Packaging Int'l, Inc.*, 790 F. App'x 745, 754 (6th Cir. 2019) (noting that ERISA "prohibits employers from terminating, or otherwise discriminating against, employees who choose to exercise a benefit to which they are entitled under their benefit plan"). Since its inception, the aim of § 510 has been to prevent

"unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested [plan] rights." *West v. Butler*, 621 F.2d 240, 245 (6th Cir. 1980).

There exist only two types of § 510 claims under prevailing Sixth Circuit jurisprudence: "(1) a 'retaliation' claim where adverse action is taken because a participant availed [him]self of an ERISA right; and (2) an 'interference claim' where adverse action is taken as interference with the attainment of a right under ERISA." *Hamilton v. Starcom Mediavest Grp.*, 522 F.3d 623, 627–28 (6th Cir. 2008) (citation omitted) (cleaned up). To state a prima facie case for retaliation, a plaintiff must show that "(1) he was engaged in an activity that ERISA protects; (2) he suffered an adverse employment action; and (3) a causal link exists between his protected activity and the employer's adverse action." *Williams*, 790 F. App'x at 754–55 (citing *Hamilton*, 522 F.3d at 628). To state a prima facie case for interference, a plaintiff must demonstrate: "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *Bailey v. U.S. Enrichment Corp.*, 530 F. App'x 471, 477 (6th Cir. 2013) (quoting *Clark v. Walgreen Co.*, 424 F. App'x 467, 474 (6th Cir. 2011) (*per curiam*)).

The type of claim at issue here is less than clear. Plaintiff alleges as part of his § 510 claim that Defendant "retaliated" against him. Compl., Doc. 1, ¶ 32. That said, both Plaintiff and Defendant in their respective briefs contemplate the plausibility of an interference claim. Doc. 12, PageID 59–60 (discussing the elements of an interference claim); Doc. 8, PageID 30–31 (same). This, however, is of no consequence because regardless of the type of claim, Plaintiff has failed to plausibly allege that Defendant acted with "the *specific intent* of violating ERISA." *Roush v. Weastec, Inc.*, 96 F.3d 840, 845 (6th Cir. 1996); *Williams*, 790 F. App'x at 755; *Schobert v. CST Transp., Inc.*, 504 F. Supp. 3d 753, 782 (S.D. Ohio 2020) ("Even drawing

5

all inferences in Plaintiffs' favor, regardless of the type of claim, there is nothing to indicate [Defendant] acted with the specific intent of violating ERISA § 510."). And yes—despite his assertions to the contrary, Plaintiff must plead facts relative to specific intent. *Spangler v. E. Ky. Power Coop., Inc.*, 790 F. App'x 719, 722–23 (6th Cir. 2019) (affirming dismissal of a § 510 claim where the plaintiff failed to plead facts that plausibly alleged the defendant engaged in prohibited conduct with the specific intent to violation ERISA); *see also Faller v. Child.'s Hosp. Med. Ctr.*, No. 1:08-cv-392, 2009 WL 29878, at *2 (S.D. Ohio Jan. 5, 2009) ("Most significant, Plaintiff has not alleged, in other than a conclusory fashion, that Defendant engaged in the allegedly prohibited conduct with the specific intent of violating ERISA, and such an allegation is required to state a claim under ERISA.").

Defendant believes Plaintiff's § 510 claim is based on an alleged misstatement. Doc. 8, PageID 31–32. Plaintiff alleges in his Complaint that he was advised by members of Defendant's top management that the sale of OnFlight triggered his Change in Control severance benefits under the Policy. Compl., Doc. 1, ¶ 18. In response, Plaintiff states that Defendant has misconstrued his § 510 claim. Doc. 12, PageID 61 ("To align this case with *Marks*, Defendant attempts to recast the assertion that Defendant told Plaintiff that his Change in Control benefits had been triggered as a misrepresentation that induced him to terminate his employment."). He explains that his claim rests on Defendant's interference with his right to seek benefits without retaliation. Doc. 12, PageID 60. Specifically, he states that Defendant interfered with his right to seek benefits when it denied him benefits after he exercised his right to seek benefits under the Policy by ending his employment for Good Reason. Doc. 12, PageID 60. This is no more than a threadbare recital of the elements of his claim. Nowhere in these allegations is there any suggestion of *specific intent* on the part of Defendant beyond

6

the conclusory allegation that Defendant denied Plaintiff's claim for "false and pretextual reasons." Compl., Doc. 1, ¶ 32; *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Thus, even construing all allegations most favorably to Plaintiff, he still has not alleged actual facts that would support a plausible inference that Defendant denied him benefits with the specific intent to impact Plaintiff's rights nor that Defendant intended to interfere with Plaintiff's rights or benefits. *See Schobert v. CST Transp., Inc.*, 504 F. Supp. 3d at 780 ("All in all, Plaintiffs must allege actual *facts* that would support a plausible inference that [Defendant] intended to impact [Plaintiffs'] ERISA rights or benefits, rather than pleading that such impacts were a 'mere consequence' [of Defendant's] actions."). Said differently, the factual allegations do not permit a reasonable inference that Defendant was motivated to deny benefits merely because Plaintiff chose to end his employment for Good Reason and pursue benefits under the Policy. *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1114 (6th Cir. 2001).

### IV. CONCLUSION

Accordingly, Defendant's Partial Motion to Dismiss (Docs. 7, 8) is **GRANTED**, and Count II of Plaintiff's Complaint is **DISMISSED** with prejudice.

**IT IS SO ORDERED.**

September 29, 2025

Jeffery P. Hopkins
United States District Judge